[No. 12594.   Department One.   September 30, 1915.]

MRS. E. B. STEWART, *Respondent*, v. PACIFIC FINANCE
COMPANY, *Appellant*.[1]

PLEADING—COMPLAINT—SEPARATE CAUSES OF ACTION.   In an action
for the collection of the amount due on bonds, and, as ancillary
thereto, to foreclose a collateral pledge, a guaranty of which was
merely pleaded as an incident, the plaintiff should not be required
to separately state causes of action for foreclosure and upon the
guaranty, as it in no sense constituted a separate cause of action.

APPEAL—RECORD—NECESSITY.   Error cannot be assigned upon al-
leged action of the court where there is nothing in the record to
show the same.

APPEAL—REVIEW—OBJECTIONS BELOW.   Error cannot be assigned
on points that were never presented to the trial court.

APPEAL—REVIEW—FINDINGS.   Findings upon conflicting evidence
will not be disturbed on appeal where the supreme court cannot say
that the evidence preponderates against them.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered July 3, 1914, upon findings
in favor of the plaintiff, in an action to foreclose bonds, tried
to the court.   Affirmed.

*Robert A. Devers*, for appellant.

*George H. Bailey* and *John N. McIntyre*, for respondent.

[1]Reported in 151 Pac. 1092.

ELLIS, J.—In September, 1910, the plaintiff purchased from the defendant forty "ten year six per cent profit sharing gold bonds," paying therefor the par value of $100 each, amounting in all to $4,000. The bonds were part of a series aggregating $20,000 issued by the defendant. As a part of the same transaction, the defendant delivered to the plaintiff forty shares of the capital stock of The South Interurban Realty Company as collateral security to the bonds sold to her. The bonds bore interest at the rate of six per cent per annum, payable semi-annually, and contained a provision that the holder should participate in the net earnings of the company. By the terms of the written agreement pledging the stock, the defendant guaranteed that the combined interest and dividends of the bonds should not be less than twelve per cent per annum. Each bond provided that, in case of default of payment of any interest payment continuing for six months, the principal should immediately become due at the option of the holder, and contained a recital that, for the prompt payment of the bond and interest at maturity, the full faith, credit and resources of the company were irrevocably pledged.

In May, 1913, the plaintiff instituted proceedings to collect the amount claimed to be due upon the bonds, alleging that certain interest payments had not been met, and that the defendant had disposed of all of its assets in violation of the irrevocable pledge thereof contained in the bonds. Apparently because the interest had not been in default for six months when that suit was instituted, and in order to include unpaid interest subsequently falling due, the plaintiff, in March, 1914, voluntarily dismissed the first action, and on the same day commenced this action. In response to a demand therefor, the plaintiff filed a bill of particulars alleging that the interest on the bonds was paid by the officers of the defendant up to January 1, 1913; that the plaintiff, through her attorney, twice made demand upon the defendant for the then unpaid interest, which demands were made on July 7,

1913, and on January 20 or 21, 1914, and that both demands were made at the office of the defendant in Seattle, Washington, upon the defendant's president.

The issues tendered by the defendant's answer were, (1) that the transaction was a loan upon usurious interest and not a sale of bonds; (2) that there was no sufficient demand for the payment of interest made upon the defendant.

The cause was tried to the court and, upon appropriate findings, a decree was entered in plaintiff's favor for $4,000, and interest at the rate of six per cent per annum from July 1, 1913, and foreclosing the pledge of the forty shares of the capital stock of the South Interurban Realty Company and ordering the sale of so much thereof as might be found sufficient to pay the amount adjudged due to plaintiff, with interest, costs and expenses of sale. The defendant appealed.

It is first contended that the court erred in denying appellant's motion to require the respondent to separately state its causes of action. It is argued that the complaint set forth a cause of action for foreclosure and also a cause under the separate contract of guaranty, and that these should have been separately stated. This is without merit. The action was clearly one for the collection of the bonds and, as ancillary thereto, to foreclose the collateral pledge the guaranty of which was merely pleaded as an incident. It in no sense constituted a separate cause of action.

It is next asserted that the court refused to permit the appellant to show that the transaction was a loan upon usurious interest instead of a sale of bonds. There is not a word in the abstract sustaining this claim, and an examination of the pages of the statement of facts cited in appellant's brief reveals nothing in its support.

It is also asserted that the court refused to extend the time within which the appellant might file affidavits in support of its motion for a new trial. There is nothing in the record showing that such a request was either made or refused.

It is further asserted that the court, on respondent's *ex parte* application without notice, permitted the withdrawal of exhibits after the appeal had been perfected. There is nothing in the abstract touching this matter, nor does the brief contain any citation to the transcript or statement of facts concerning it.

It is claimed that the contract pledging the stock cannot be sustained in equity because it was in fraud of the other bondholders, to whose bonds also all of the resources of the appellant were pledged as security. There is no citation either to the abstract or to the statement of facts indicating where, if at all, this point was ever presented to the trial court. Moreover, there is nothing to show that any bonds of this same series have ever been sold on terms different from those accorded to the respondent on her purchase.

Finally, it is contended that the court erred in finding that any demand was ever made for the interest so as to place the appellant in default. The evidence on this point was in sharp and irreconcilable conflict. The trial judge solved the question in respondent's favor upon considerations so adequate that we take the liberty of a quotation. He said:

"Now, Mr. McIntyre is positive and explicit in his testimony that he did present these bonds and coupons on three separate occasions; particularly in January, 1914. The testimony to the contrary is negative in character. Positive testimony is always to be regarded by the court, where it is credible at all, as of more weight than negative testimony. A man who does a thing is apt to remember it. Somebody who does not see and do it cannot be so certain of the fact that he did not do it. Now, there was testimony here of one witness here that the president of this company was not in his office at all during business hours during the month of January, 1914, and yet it is the testimony of his sister that he was there every day from time to time during business hours. It is the testimony of the nephew and the sister of the president of this company that Mr. McIntyre could not have been there unless they would have seen him. Yet the

court must know that it would be possible for them to be mistaken. No one stays planked in one chair all day long in any business office and it would be quite possible for Mr. McIntyre to be there during the absence of one of them or during the time when they were not closely observing what was transpiring. Unless I must believe that Mr. McIntyre is a deliberate perjurer in this case and he has manufactured out of whole cloth a falsehood, I am compelled to credit his testimony. I would direct proceedings to be brought against him for disbarment if I could think it possible that he would manufacture a story like that. I don't think he would do it. I will take his testimony. It can be reconciled with the testimony of the other witnesses because they may not have observed him. He must know what he did."

While we are not bound by the trial court's findings, they are entitled to weight. We cannot say that the evidence preponderates against them merely because the greater number of witnesses testified the other way, especially where their testimony was essentially negative in character.

We find nothing in the record presented here to justify a reversal.

The judgment is affirmed.

MORRIS, C. J., MOUNT, HOLCOMB, and MAIN, JJ., concur.