[No. 18807.   Department Two.   May 7, 1925.]

AMERICAN STATE BANK (*Supervisor of Banking, Substituted*), *Appellant,* v. NEAL SULLIVAN, *Defendant,* C. F. HARDING, *Administrator of the Estate of O. H. Harding, Deceased, Respondent.*[1]

LANDLORD AND TENANT (44, 118)—TENANCY FROM YEAR TO YEAR—TERMINATION—RENT—LIEN—WRITTEN LEASE. A farm tenant under a written lease for a year who holds over for sixty days after expiration of the term without notice to quit, is entitled, by Rem. Comp. Stat., § 813, to hold under the original lease for another year, and this applies to subsequent years; and such holding is under a "written" lease, within Id., § 1190, giving a landlord's lien for rent.

SAME (118-121)—LIEN ON CROPS—NOTICE—RECORDING WRITTEN LEASE. The proviso to Rem. Comp. Stat., § 1190, dispensing with the recording of a landlord's lien for rent if the lease is recorded, does not make the recording of the lease a prerequisite to a lien, filed for record as provided by such section.

SAME (16)—BREACH OF COVENANTS—MEASURE OF DAMAGES—EVIDENCE. The measure of a landlord's damages from a farm tenant's breach of special covenants to properly summer-fallow the land on the last year of his tenancy, is the difference between the value of the properly summer-fallowed land and its value as it was left, rather than the estimated loss of wheat, at a prospective future market price.

[1]Reported in 235 Pac. 815.

SAME (121-1)—RENT—LIEN—ACTIONS. In an action to foreclose a landlord's lien on a farm crop, under Rem. Comp. Stat., § 1188, damages cannot be recovered without proof that they occurred during the last year, for which the claim was filed.

TROVER AND CONVERSION (14)—ACTIONS—PARTIES LIABLE. Where a lessee and a bank appropriated the landlord's portion of a crop of wheat, both having notice of the landlord's lien for rent and liable for the conversion, the bank cannot complain of a personal judgment against it.

EXECUTORS AND ADMINISTRATORS (146)—ACTIONS—SET-OFF AND COUNTERCLAIM. A bank that has converted property of an estate is not entitled to offset the estate's indebtedness to it in a large sum, if there are other creditors of the estate equally entitled.

Appeal from a judgment of the superior court for Adams county, Oswald, J., entered February 23, 1924, upon findings in favor of the defendant cross-complainant, in an action to foreclose a chattel mortgage, tried to the court. Reversed.

*E. A. Davis* and *Lovell & Ott,* for appellant.
*John A. Peacock* and *W. O. Miller,* for respondent.

FULLERTON, J.—This proceeding was originally instituted in Adams county by the American State Bank, a banking corporation organized under the laws of this state, against the respondent Neal Sullivan, to foreclose by notice and sale a chattel mortgage given by Sullivan to the bank, covering a wheat crop and certain other personal property. The respondent, C. F. Harding, acting as administrator of the estate of O. G. Harding, intervened in the foreclosure proceeding and caused the proceeding to be transferred to the superior court of the county named. From the judgment entered in the superior court, the bank appealed to this court. After the appeal had been perfected, the bank became insolvent and was taken over by the state supervisor of banking for liquidation. On November 14, 1924, by an order of this court bearing

that date, the supervisor of banking was substituted as appellant.

The facts necessary to an understanding of the controversy are in substance these: The land upon which the wheat crop was grown is property of the estate of O. G. Harding. By an instrument in writing dated January 4, 1921, the administrator of the estate leased the land to Neal Sullivan for a term of one year, reserving as rental one-third of the crops to be grown thereon. By the terms of the lease, and as a further consideration for its execution, Sullivan agreed not to commit waste on the property; agreed to keep the fences and buildings thereon in good repair; agreed to comply with the laws of the state relating to the destruction of noxious weeds; and agreed to cultivate and till the land in a good and farmer-like manner and according to the best course of farming practiced in the neighborhood. Sullivan held over after the expiration of the written lease and farmed the lands for the years 1922 and 1923. During the years 1921 and 1922, he recognized the interests of his lessor and made return of rentals to the administrator at the rate prescribed in the written lease. For the third year he denied his tenancy, and took a lease from the bank. This controversy, however, was settled in favor of the administrator in another action (see *Womach v. Harding,* 129 Wash. 247, 224 Pac. 384) and needs no further consideration. In the spring of 1923, Sullivan gave the bank a chattel mortgage on his interest in the crop to be grown on the land during that year. This is the mortgage in controversy here.

After the proceedings to foreclose the mortgage by notice and sale had been instituted by the bank, the administrator caused the lease executed in 1921 to be recorded, and at the same time filed a landlord's lien

on the mortgaged crop, under §§ 1188-1190, of the code (Rem. Comp. Stat.) [P. C. §§ 9666-9668]. In the lien the administrator not only claimed one-third of the crop grown in 1923, but a large sum in the way of damages for an alleged breach of the other provisions of the lease. After the proceedings had been transferred to the superior court, the bank filed therein a complaint in foreclosure in the usual form. The administrator, for answer to the complaint, interposed certain denials, and by a cross-complaint sought a foreclosure of the lien. On the issues framed, the court found and concluded that Sullivan was the tenant of the administrator; that he was liable to the administrator not only for the rental reserved in the lease, but for the damages accruing because of his failure to perform the other covenants contained therein; and that, in virtue of the lien claim filed, the administrator had a lien on the mortgaged grain, superior to the lien of the bank's mortgage. It also further found and concluded:

"That defendant and cross-complainant, C. F. Harding, is entitled to recover a judgment against American State Bank, a corporation, and Neal Sullivan, in the sum of $3,910.69, together with his costs and disbursements herein, including an attorney's fee in the sum of $400.00 for his attorneys, arrived at and made up of the following items:

"1/3 of 2720 sacks Baart wheat or 1/3 of 6120
    bushels of Baart wheat, being 2040 bushels
    at 86c per bushel.......................$1,754.40
"1/3 of 904 sacks Turkey Red wheat or 1/3 of
    2034 bu. Turkey Red wheat, being 678
    bushels at 82c per bu. ..................   555.96
"1/3 of 1100 bushels of Baart wheat cut for
    hay, being 366 2/3 bushels at 86c per bushel   315.33
                                              ─────────
    "Total for wheat ...................$2,625.69

"Damages for breach of the covenants contained in said lease—

| | |
|---|---|
| "Failure to remove weeds | $140.00 |
| "For failure to plow | 100.00 |
| "Failure to properly farm the premises creating loss of ten bushels per acre, about 700 bushels at 85c per bushel | 595.00 |
| "For failure to cultivate and care for the orchard | 200.00 |
| "For failure to keep up the fences and buildings | 250.00 |
| "Total damages | $1,285.00 |

"The judgment of defendant and cross-complainant, C. F. Harding, as administrator of the estate of O. G. Harding, being in the sum of $3,910.69, together with $400 attorneys' fees for his attorneys, and $13.90 costs, and that all of said judgment bear interest at the rate of 6% per annum from date of judgment until paid."

Judgment was entered in accordance with the findings and conclusions. It is from this judgment that the bank appealed.

The appellant's first contention is that the lien claim is invalid because of a failure to comply with the statutes creating it. The applicable statutes we have cited. Section 1188 thereof provides that,

"Every landlord shall have a lien upon the crops grown or growing upon the demised lands of any year for the rents accrued or accruing for such year, whether the same is paid wholly or in part in money or specific articles of property, or products of the premises, [and further provides] . . . that the lien . . . shall be a preferred lien, and shall be prior to all other liens."

Section 1190 provides that any landlord "claiming the benefit of this chapter must, within forty days . . . after the expiration of the term, or after the expiration of each year of the lease, . . . ." file for

record with the county auditor of the county in which the demised premises are situated a claim in a prescribed form. The section contains the following proviso:

"Provided, that the lien hereby created in favor of landlords for rents shall apply when the lease has been recorded, and the recording of the lease shall dispense with the necessity of filing or recording any other notice or claim of lien for rents during the leasehold period;"

And concludes with the provision that any claim for damages for failure to comply with the conditions of the lease must be filed and recorded "at the time and in the manner heretofore specified."

The argument is that, under these statutes, a landlord is not entitled to a lien for rental or damages except in those instances where the tenant is holding under a recorded written lease, and that here the tenant was not holding under such lease. But, accepting for the moment the appellant's interpretation of the statute, we cannot accept its conclusion. The tenant entered under a written lease, and was permitted to hold over after the expiration of his term for more than sixty days, without demand or notice to quit from his landlord. By the express terms of the statute (Rem. Comp. Stat., § 813) [P. C. § 7971], this entitled him to hold "under the terms of his lease" for another full year. The same condition arose at the beginning of the third year of the tenancy; the tenant was again permitted to hold over, and likewise held under the terms of his original lease. *Mounts v. Goranson,* 29 Wash. 261, 69 Pac. 740; *Spreitzer v. Miller,* 98 Wash. 601, 168 Pac. 179; *Smeltzer v. Webb,* 101 Wash. 568, 172 Pac. 750. We conclude, therefore, that if a written lease is an essential to the creation of a lien, there was here such a lease.

But we think, furthermore, that the appellant has misinterpreted the statute. The wording of § 1190 is, to be sure, somewhat awkward. But it is plain that the statute, when read in the light of the prior statute of which it is amendatory, meant to do away with the necessity of filing a lien in instances where the lease was recorded, rather than to require a recorded lease as a condition precedent to the filing of a lien. It may be that the lien of a recorded lease would extend only to the rents reserved therein, and that to perfect a lien for damages arising out of a breach of the conditions of the lease the filing of a lien is necessary, but it is plain that there was no intent to deny the right of lien in instances of oral leases, unrecorded written leases, or other recognized forms of tenancies of agricultural lands, which must be the result if the interpretation of the appellant be adopted.

There is nothing in the case of *Chute v. Brown*, 103 Wash. 364, 174 Pac. 438, cited by the appellant, which is contrary to the principles we here announce. In that case it was not held that there could be no lien for rents or for damages for the breach of the covenants of an unrecorded lease. It was merely held that a claim of lien upon crops for rent must be filed prior to the sale of the crops, else the lien would not attach as against a *bona fide* purchaser for value, a principle not necessary to be controverted in order to hold the present lien valid as against the claim of the appellant.

The appellant next contends that the evidence does not justify the damages awarded by the court as for a breach of the special covenants of the lease. With this contention we are constrained to agree in part. There was some evidence tending to support the items allowed for failure to remove weeds and failure to plow, and these items will be allowed to stand. As to the

third, fourth, and fifth items, however, we find no competent evidence in their support. Concerning the first of these (failure to properly farm the premises, creating loss of ten bushels per acre, about 700 bushels at 85c per bushel, $595), the administrator testified that it arose from the improper manner in which the tenant had summer-fallowed certain of the leased premises during the last year of his tenancy; that the tenant had ploughed the land out of season, and had not properly cultivated it after the ploughing; and that, in his judgment, it would produce ten bushels less of wheat per acre during the next crop season than it would produce had it been properly farmed. This quantity, at 85c per bushel, would amount to $595. But manifestly this was not the proper measure of the damages suffered by the breach of the lease. It is a matter of common knowledge that climatic conditions during the growing season have much to do with the yield of lands when cropped to wheat, and nothing short of prescience could tell whether there would be a yield of ten bushels per acre during the following year, even had the land been properly farmed. Nor was it possible to know what the price of wheat would be at the end of the harvest season of that year. There was, moreover, in this instance a definite measure which the court could have applied. It appears in the record that summer-fallowed ground has a market value. The measure was, therefore, the difference between the value of the ground had it been properly summer-fallowed and its value summer-fallowed as it was. There being no evidence as to this difference, nothing can be awarded therefor.

As to the remaining items, while there is evidence that the orchard was destroyed, and evidence that the fences and buildings had not had the proper care, there was no evidence that the damage because thereof ac-

crued during the last year of the lease. Since it is only for the damage caused during that year that a lien on the crop can be maintained, these items must fail for want of sufficient proofs.

Finally, it is contended that the court erred in entering a personal judgment against the bank. This contention has its foundation in the further contention that there is in the hands of the sheriff, subject to the order of the court, a sufficient quantity of wheat to satisfy the landlord's rental portion of the crop. If the fact here assumed were well founded, there would be merit in the contention; it would be, in such a case, the proper judgment to award to the landlord the wheat on hand and enter a personal judgment against the lessee and the bank for the deficiency, if a deficiency remained. But the appellant cites us to no place in the record where the fact is shown, and as we read the evidence it shows to the contrary; it shows, as we understand it, that the lessee and the bank appropriated to their own uses all of the grain, the landlord's portion as well the portion of the lessee, and the trial court so found. This being the fact, a personal judgment was without error. Both the bank and the lessee had knowledge of the landlord's claim at the time they appropriated the wheat, and are liable as for a conversion. We do not overlook the contention, made in this connection, that the estate represented by the administrator is indebted to the bank in a large sum and that it should be allowed to offset this indebtedness against any claim the landlord may have arising from an appropriation of the wheat. It is, however, a sufficient answer to this to say that we do not find any evidence in the record establishing such an indebtedness. The fact, moreover, if established, would not alone permit an offset. There may be other creditors of the estate equally entitled thereto.

Our conclusion is that the judgment entered is too large, because of the inclusion therein of the items of damage which we have referred to as having no evidence in their support. The judgment is, therefore, reversed and the cause remanded with instruction to modify the judgment by eliminating these items.

HOLCOMB, MAIN, MITCHELL, and MACKINTOSH, JJ., concur.