[No. 24285. Department One. March 22, 1933.]

THE EXETER COMPANY, *Respondent,* v. HOLLAND
CORPORATION *at al., Appellants.*[1]

[1]Reported in 20 P. (2d) 1; 23 P. (2d) 864.

324

*Philip D. Macbride, Charles T. Donworth,* and *George W. Williams,* for appellants Holland Corporation *et al.*

*Stedman & Stedman,* for appellants Realty Investment Corporation *et al.*

*Poe, Falknor, Falknor & Emory,* for respondent.

*McMicken, Ramsey, Rupp & Schweppe,* amicus curiae.

PARKER, J.—There is here presented an appeal by the principal defendant, Holland Corporation, from a judgment of the superior court for King county awarding recovery against it in favor of the plaintiff, the Exeter Company, in the sum of approximately forty thousand dollars, and decreeing that recovery to be a lien charge against funds deposited by the Holland Corporation, as lessee, with the Exeter Company, as lessor, and also a lien charge against certain funds as rental proceeds of the lease. There are also here presented appeals of the additional defendants from the same judgment in so far as it awards recovery of ten thousand dollars thereof against them in favor of the Exeter Company, upon the theory that they appropriated, without right, that amount of rental proceeds subject to the lien charge awarded against the Holland Corporation.

The lease contract, with reference to which this controversy arose and has been waged, entered into between the Exeter Company and Moon Realty Company, now the Holland Corporation, reads, in so far as need be here quoted, as follows:

"THIS INDENTURE OF LEASE, made and entered into this 5th day of February, 1927, by and between THE

EXETER COMPANY, a corporation organized and existing under the laws of the State of Washington, party of the first part, hereinafter called the lessor, and MOON REALTY COMPANY, also a corporation organized and existing under the laws of the State of Washington, party of the second part, hereinafter called the lessee, witnesseth:

"That the lessor does by these presents lease and demise unto the lessee, its successors and assigns, the following described tract, lot or parcel of land situated in the City of Seattle, King County, Washington, to-wit:

"Lot seven (7) in block twenty-one (21) of A. A. Denny's Third Addition to the City of Seattle, being situated on the west side of Fourth avenue and having a frontage of sixty (60) feet on Fourth avenue and a depth of one hundred eleven (111) feet more or less together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining, and all of the buildings and improvements thereon, for a period of ninety-nine years, beginning with the first day of January, 1927, and ending with the thirty-first day of December, 2025, at a rental and upon the terms and conditions following, to-wit: . . .

"(3) The rental of said premises shall be as follows: The sum of thirty-six thousand dollars ($36,-000) per year during and throughout the entire period, said yearly rental being divided into twelve (12) equal monthly installments of three thousand dollars ($3,000) each, each of which monthly installments shall be due and payable on the first day of each calendar month for said month in advance, beginning January 1, 1927. . . .

"(4) In addition to the aforesaid rental, the lessee will pay . . . ; and for each and every year during the term of this lease, will pay, before the date when the same would otherwise become delinquent, and in ample time to prevent the addition of any interest or penalty, all lawful taxes, charges or assessments, both general and special, of every kind and for every purpose, that shall be now or may here-

after by any lawful authority, be imposed, levied or assessed upon the said demised premises, . . .

"(6)   The lessee has, at the time of the execution of these presents, paid to the lessor the sum of thirty-five thousand dollars ($35,000) in cash as security to the lessor for the full performance on the part of the lessee of all the terms, covenants and conditions in this lease on the part of the lessee to be performed.

"During such time as said deposit is held by the lessor the lessor shall pay the lessee six per cent (6%) per annum interest thereon, semi-annually. . . .

"(11)   The whole amount of rent reserved and agreed to be paid hereunder, and each and every installment thereof, and all sums agreed hereunder to be treated as rent, and all reasonable costs and expenses, including attorney's fees which may be incurred in enforcing the provisions of this lease, or on account of any delinquency of the lessee in carrying out any of the provisions of this lease, or incurred in defending claims or liens based upon acts of the lessee and asserted against the lessor's interest in said demised premises, shall be and they are hereby declared to be a first and valid lien upon all sub-rent or other income, issues and profits of the demised premises, . . ."

The leased premises are near the center of the main business district of the city of Seattle. At the time of the execution of the lease, and at all times since then, the leased premises included a business building, several stories high and of the same area as the leased land, having storerooms on the street floor and office rooms on the upper floors.

It was evidently contemplated by the parties that the Holland Corporation would manage the building and sub-rent the storerooms and offices thereof; that is, that it would so engage in the operation of the building as a business. However, the terms of the lease do not obligate the Holland Corporation to so use the building. It had no obligation to the Exeter

Company under the lease as to the use of the building, save to maintain it in good physical condition and not use it for any unlawful purpose. Nor is there any language in the lease suggesting that there should be any privity of tenancy contract between the Exeter Company and any of the sub-tenants of the Holland Corporation. They were to be, while the lease remained effective, and have been since the beginning of the lease term, tenants of the Holland Corporation and not tenants of the Exeter Company.

About the time of the execution of the lease, the Holland Corporation deposited with the Exeter Company thirty-five thousand dollars, as agreed in paragraph six of the lease, and entered into possession of the property and full enjoyment of its rights under the lease; such possession being treated by the parties as commencing on January 1, 1927, the stated beginning of the term, though the lease was not formally executed until February 5, 1927. The possession and full enjoyment of the premises by the Holland Corporation continued uninterrupted until the commencement of this action on June 5, 1931; the Holland Corporation timely paying from month to month the rent in full up to and including the rent for the month of May, 1931.

The Holland Corporation failed to pay the three thousand dollars rent due June 1, 1931, for that month, and also failed to pay taxes against the property then due, amounting to $6,015.47; so it was then in default in the sum of $9,015.47, but no more. At all times since the execution of the lease, the Exeter Company has held the whole of the thirty-five thousand dollars deposited with it by the Holland Corporation under paragraph six of the lease, and up until the beginning of this action. The Exeter Company had no occasion to look to that deposit as security to

satisfy any other or further default obligation of the Holland Corporation.

On June 5, 1931, the Holland Corporation remaining in default in the payment of rent and taxes in the aggregate sum of $9,015.47, as above noticed, but not otherwise, the Exeter Company commenced this action seeking recovery of a judgment against the Holland Corporation for that amount; also seeking the establishing of such recovery as a lien charge against the thirty-five thousand dollars held by it under paragraph six of the lease, also as a lien charge upon all sub-rentals owing or to become owing to the Holland Corporation; also seeking an injunction restraining the collection of all sub-rentals by the Holland Corporation from its sub-tenants; and also seeking the appointment of a receiver to collect all sub-rentals owing or to become owing to the Holland Corporation.

On June 5, 1931, the day of the commencement of the action, the superior court, upon the ex parte application of the Exeter Company, entered an order appointing a temporary receiver to collect the sub-rentals from the sub-tenants of the Holland Corporation and restraining the payment thereof to, or collection by, the Holland Corporation until the further order of the court; the Holland Corporation and the sub-tenant defendants to show cause on June 12, 1931, why that temporary receivership and restraining order should not be made permanent pending the action. On June 17, 1931, following the show cause hearing, at which the Holland Corporation resisted the continuance of the receivership and restraining order, the court entered its order making the receivership and restraining order as an injunction permanent pending the action.

On June 17, 1931, following the order of the court making the receivership and injunction permanent

pending the action, the Holland Corporation abandoned the leased premises and caused its written notification thereof to be delivered to the Exeter Company, reading as follows:

"THE EXETER COMPANY     Seattle, Washington
"C/o Mr. C. K. Poe, President,
"977 Dexter Horton Building,
"Seattle, Washington.
"Gentlemen:

"Referring to the lease dated February 5, 1927, between your company as Lessor and Moon Realty Company, as Lessee, (the name of which is now Holland Corporation) covering Lot 7, Block 21, A. A. Denny's Third Addition to the city of Seattle, (which lease is of record in Volume 53 of Leases at page 503, of the records of King county, Washington), you are hereby required to take notice that your action in procuring (over the strenuous opposition of this Company and against its protest) the appointment of a receiver in the case of The Exeter Company, plaintiff, v. Holland Corporation et al., defendants, being cause No. 242555 upon the docket of the superior court of the state of Washington for King county, to collect the rentals from the sub-tenants of Holland Corporation occupying said premises during the pendency of that action and in enjoining the payment of rentals to the Holland Corporation by its sub-tenants occupying the several parts of said premises, deprives said lessee Holland Corporation of the beneficial use and enjoyment of said premises and prevents it from exercising the rights of a lessee of said premises, and constitutes an eviction of Holland Corporation from said premises against its will and has terminated said lease.

"You are therefore hereby notified that Holland Corporation has been compelled by your action to discontinue service to its tenants and has discharged its employees in said premises and hereby acknowledges that, forced by your action, it does hereby surrender to you such possession (if any) of said premises as your action has left in said Holland Corporation. The keys to the building situated on said premises are herewith delivered to you.

"Holland Corporation hereby makes demand upon you for the sum of $25,984.53 being the balance of the deposit of $35,000 which you have heretofore held pursuant to the terms of said lease, less $9,015.47 claimed by you as owing from Holland Corporation at the time of eviction.

"Dated at Seattle, Washington, this 17th day of June, 1931.

"(Corporate Seal)

HOLLAND CORPORATION

By M. Ross Downs, President

Attest: ARTHUR E. BURR, Secretary."

On August 17, 1931, the Exeter Company filed its amended complaint seeking judgment against the Holland Corporation, as in its original complaint, adding its claim of rent for the months of July and August, 1931; and also bringing into the action the additional defendants, seeking to subject them to a liability to the extent of ten thousand dollars, upon the theory that they had appropriated, without right, that amount of the proceeds of the sub-rentals which it claimed to be subject to its lien claim.

On November 23, 1931, the Holland Corporation filed its answer and cross-complaint, seeking denial of the relief sought by the Exeter Company and seeking recovery against that company in the sum of $25,984.53; that being the remaining portion of the thirty-five thousand dollars held by The Exeter Company under paragraph six of the lease after deducting therefrom the sum of $9,015.47, the whole amount as to which the Holland Corporation was in default at the time of the entering of the receivership and injunction order on June 17, 1931.

On June 21, 1932, the receivership being still in existence, and the cause being about to proceed to trial upon the merits, the Exeter Company gave notice to the Holland Corporation of its proposed amend-

ment to its amended complaint, claiming, in addition to the recoveries sought by its original and amended complaints, all rent and taxes maturing up to that date under the lease as then owing to it by the Holland Corporation, upon the theory that there had not occurred any termination of the lease by eviction as claimed by the Holland Corporation. This proposed amendment was allowed by the court to be made as an additional pleading in the case.

The cause, being of equitable cognizance, proceeded to trial on July 6, 1932, in the superior court sitting without a jury, and resulted in a judgment, in substance, as follows:

(1) The court awarded to the Exeter Company against the Holland Corporation recovery in the sum of $43,654.51, to be partially satisfied by the receiver paying thereon $7,758.11, the net amount of his rental collections remaining in his hands after payment of the expenses of his operation of the building. The court further awarded to the Exeter Company against the Holland Corporation an attorney's fee in the sum of four thousand dollars and costs.

(2) The court awarded against the additional defendants ten thousand dollars of the award against the Holland Corporation, making that much of the judgment and award against both the Holland Corporation and the additional defendants; this upon the theory of the additional defendants having appropriated, without right, that amount of the sub-rentals.

(3) The court decreed the whole of the award against the Holland Corporation and the additional defendants to be a valid, subsisting lien against net rentals collected by, and in the hands of, the receiver, the ten thousand dollars adjudged to have been appropriated by the additional defendants, and the thirty-five thousand dollars deposited and remaining in the

hands of the Exeter Company under paragraph six of the lease.

The judgment does not in terms affirmatively deny the affirmative relief sought by the Holland Corporation by its cross-complaint, but, of course, the judgment has the effect of denying that relief so sought by the Holland Corporation. From this disposition of the cause by the superior court, the Holland Corporation and the additional defendants have prosecuted appeals to this court.

■ Was there on June 17, 1931, an eviction of the Holland Corporation from the leased premises by the acts of the Exeter Company such as to relieve the Holland Corporation from all its future accruing rent and other obligations to the Exeter Company under the lease? It seems plain to us that the receivership and injunction placing the entire collection of the sub-rentals beyond the control of the Holland Corporation on that day was procured by the Exeter Company against the will and protest of the Holland Corporation. It seems to us equally plain that the Holland Corporation was thereby deprived of its control, management and enjoyment of the leased premises in a very substantial degree.

The Holland Corporation was operating the building as a business by sub-renting the numerous occupancies therein to its numerous tenants, being obligated to furnish to its sub-tenants elevator, heat, light, janitor and other service such as is usually furnished to such tenants in such buildings. Plainly, such use of the premises was a rightful enjoyment of the premises by the Holland Corporation under the terms of the lease. Indeed, that was contemplated by both parties as the probable use of the building, though there is no language in the lease so limiting its use by the Holland Corporation.

It is argued in behalf of the Exeter Company that, there being no physical eviction of the Holland Corporation from the premises, there was in law no eviction. When the Holland Corporation was deprived by the receivership and injunction order of its right to collect and receive the rentals from its sub-tenants, it was effectually, in a very substantial measure, deprived of its enjoyment of the premises. When a tenant, by receivership and injunction procured by his landlord, is deprived of all the current fruits of his business, rightfully conducted in the leased premises, we fail to see why that is not an effectual, substantial depriving of the tenant of the enjoyment of the leased premises, and as such constitutes an eviction of the tenant. In *Wusthoff v. Schwartz,* 32 Wash. 337, 73 Pac. 407, Judge Hadley, speaking for the court, said:

"It is a well established rule that actual force is not necessary to effect an eviction in law, but that any interference by the landlord with the full and substantial enjoyment by the tenant of the thing leased amounts to an eviction. In *Hoeveler v. Fleming,* 91 Pa. St. 322, the court observed:
" 'The modern doctrine as to what constitutes an eviction is, that actual physical expulsion is not necessary, but any interference with the tenant's beneficial enjoyment of the demised premises will amount to an eviction in law.' "

This view of the law has support in observations later made by this court in *Tennes v. American Building Co.,* 72 Wash. 644, 131 Pac. 201, *Brewster Cigar Co. v. Atwood,* 107 Wash. 639, 182 Pac. 564, and *Cline v. Altose,* 158 Wash. 119, 290 Pac. 809, 70 A. L. R. 1471, though we do not cite these cases as being exactly in point. The law seems to us to be well stated in general terms in the text of 16 R. C. L. 686, as follows:

"The ancient rule of the common law that entry and expulsion, or some real disturbance of the possession,

was required to establish eviction of a tenant by his landlord has been so far modified in favor of the tenant that actual ouster or physical dispossession is no longer necessary to constitute an eviction, so that now it may be said to be the established rule that any disturbance of the tenant's possession by the landlord or by someone under his authority whereby the premises are rendered unfit for occupancy for the purposes for which they were demised or the tenant is deprived of the beneficial enjoyment of the premises amounts to a constructive eviction, if the tenant abandons the premises within a reasonable time.''

We are of the opinion that the receivership and injunction order procured by the Exeter Company on June 17, 1931, was such an interference with the enjoyment of the leased premises by the Holland Corporation as to constitute an eviction, and relieve it from all future accruing rent and other obligations to the Exeter Company under the terms of the lease, unless that result is obviated by other considerations now to be noticed.

It is argued in behalf of the Exeter Company that the abandonment of the leased premises by the Holland Corporation was a wholly voluntary submission by it to the receivership and injunction order, and that therefore it is now estopped from claiming termination of its further rent and other obligations to the Exeter Company under the lease, upon the theory of eviction. This, we think, is sufficiently answered by the facts above noticed. This is not a case of the landlord assuming possession of the leased premises upon voluntary abandonment by the tenant without just cause. It is a case of the landlord depriving the tenant of his enjoyment of the premises under the lease and the tenant abandoning the premises because of such action on the part of the landlord. It is a case of the tenant exercising his right

of election to abandon the premises by submitting to the actions of the landlord, constituting an eviction.

It is argued in behalf of the Exeter Company that it had the right to enforce the collection of the unpaid rent and taxes, amounting to $9,015.47, by its receivership and injunction proceedings commenced June 5, 1931, though it then had in its possession the whole of the thirty-five thousand dollars deposited with it under paragraph six of the lease, to secure that obligation. In this connection, let it be remembered that no additional rent or other obligation matured against the Holland Corporation under the lease until July 1, 1931, when the July rent became payable, and that it was in the meantime that the Exeter Company procured the receivership and injunction order depriving the Holland Corporation of its enjoyment of the leased premises, which resulted in its abandonment of the premises, consummated by its notice of June 17, 1931.

Just why a receivership and injunction should be awarded, as procured by the Exeter Company, depriving the Holland Corporation of its enjoyment of the premises, to enforce the payment of the rent and taxes, amounting to only $9,015.47, at a time when the Exeter Company had in its hands thirty-five thousand dollars deposited with it by the Holland Corporation under paragraph six of the lease to secure that obligation, is, to our minds, hard to justify. But let us pursue our inquiry further, with a view of determining just what were the enforcible lien rights of the Exeter Company on June 17, 1931; first, against the sub-rentals which had then been paid; second, against the sub-rentals which were then owing and unpaid; and third, against the sub-rentals which might thereafter become owing and payable.

■ Has the Exeter Company any enforcible lien rights against moneys which had been actually paid to the Holland Corporation by its sub-tenants before the commencement of this action and the entering of the receivership and injunction order? We do not overlook the broad language of paragraph 11 of the lease purporting to secure the rent and other lease obligations of the Holland Corporation to the Exeter Company, by declaring those obligations "to be a first and valid lien upon all sub-rents or other income, issues and profits of the demised premises."

It seems to us that, as to moneys actually paid to the Holland Corporation by its sub-tenants before the institution of legal proceedings seeking their subjection to the lease lien of the Exeter Company, that company has no remaining, enforcible lien rights with reference to such money. It is ten thousand dollars of money of this class so paid to the Holland Corporation by one of its sub-tenants for cancellation of its sub-lease, and in turn paid out by the Holland Corporation for the benefit of one of its creditors, at the instance of the additional defendants, before the commencement of this action, that the Exeter Company seeks to follow by virtue of its claimed lease lien, and obtain judgment for that sum against the additional defendants, as well as against the Holland Corporation.

We are of the opinion that the Holland Corporation and its creditor, for whom the additional defendants were acting, were acting within their legal rights in so dealing with this ten thousand dollars, and that neither the Holland Corporation nor any of the additional defendants is liable to the Exeter Company therefor. If this be not so, then the Holland Corporation was little else than the mere agent of the Exeter Company in the management and con-

trol of the leased premises. Clearly, we think the language of the lease, read as a whole, does not mean that the lease rights of the Holland Corporation were intended to be so limited. We therefore conclude that the Exeter Company is not entitled to judgment against the Holland Corporation or any of the additional defendants for this ten thousand dollars.

We have not overlooked the alleged conspiracy between the Holland Corporation and the additional defendants and the evidence introduced to sustain such alleged conspiracy looking to avoidance of the claimed lease lien rights of the Exeter Company upon the ten thousand dollars. That, we think, is of no moment in our present inquiry, in view of the right of the Holland Corporation to collect and deal with the sub-rentals collected by it as it pleased up to the time of the commencement of this action.

What were the enforcible lien rights of the Exeter Company on June 17, 1931, as against the sub-rentals payable to the Holland Corporation by its sub-tenants which remained unpaid at the time of the commencement of this action? We have seen that the only unpaid obligations of the Holland Corporation then owing to the Exeter Company, or owing to that company up to July 1, 1931, were three thousand dollars rent for June, 1931, and $6,015.47 taxes against the premises, for the security of which the Exeter Company had in its possession the whole of the thirty-five thousand dollars deposited with it by the Holland Corporation under paragraph six of the lease. There is nothing in the terms of the lease suggesting that there was to be any forfeiture of any portion of that deposit. It was made solely for the purpose of securing rent and other obligations of the Holland Corporation to the Exeter Company arising under the lease.

We are of the opinion that the procuring of the receivership and injunction order by the Exeter Company, interfering as they did in a very substantial measure with the enjoyment of the leased premises by the Holland Corporation, was such an interference as the Holland Corporation was then justified in electing to treat as an eviction of it from the premises and a termination of all its further obligations for rent or otherwise under the lease.

It may be suggested that the final receivership and injunction order was an adjudication against the Holland Corporation of the right of the Exeter Company to so deprive the Holland Corporation of the enjoyment of the premises. Any judgment awarding what amounts to a re-entry by a landlord is, of course, an adjudication against the tenant, if rendered upon due process. But that does. not amount to an adjudication that the tenancy continues after such re-entry.

Had the Exeter Company, up to June 17, 1931, any lien rights then enforcible against the sub-rentals which might thereafter become due and payable to the Holland Corporation by its sub-tenants? We are of the opinion that this inquiry must be answered in the negative. Manifestly, an affirmative answer to this inquiry would mean that such enforcement could be had before the maturity of the obligations sought to be recovered. Since we hold that the Exeter Company evicted the Holland Corporation from the leased premises on June 17, 1931, when that company owed the Exeter Company for rent and taxes only $9,015.47, for which that company had cash security in the sum of thirty-five thousand dollars deposited under paragraph six of the lease, we are of the opinion that the sub-rentals and other obligations which might thereafter have become owing by the Holland Corporation to the Exeter Company under the lease become of no

consequence in our present inquiry; for such obligations ceased to exist, even potentially, by the eviction which terminated the tenancy under the lease, the Holland Corporation so electing by its written notice of June 17, 1931, as was its then right of election.

These considerations lead us to the conclusion that the Exeter Company has no right of recovery against the Holland Corporation other than to be awarded the sum of $9,015.47, the amount owing to it on June 1, 1931, with legal interest thereon from that date, together with attorney's fees, as agreed in the lease, and costs incurred in its prosecution of this action in the superior court; such award to be satisfied by deduction and retention from the thirty-five thousand dollars deposited with it under paragraph six of the lease.

Now, what are the rights of the Holland Corporation with reference to the thirty-five thousand dollars deposited by it with the Exeter Company under paragraph six of the lease? It clearly appears that that deposit was made under paragraph six of the lease solely to secure rent and other obligations of the Holland Corporation to the Exeter Company to accrue under the lease. Having determined the measure of the Exeter Company's right of recovery retainable by it from that fund, we think it plainly follows that the Holland Corporation has right of recovery upon its cross-complaint from the Exeter Company of a sum equal to the remainder of that deposit, with legal interest thereon from June 17, 1931, the date of its eviction from the premises, together with its taxable costs incurred in prosecuting its cross-complaint in the superior court.

The judgment of the superior court is reversed, and the cause remanded to that court with directions to render its judgment as above indicated. The Holland

Corporation and the additional defendants shall be awarded against the Exeter Company their costs and disbursements incurred in the prosecution of their appeals to this court.

HOLCOMB, MITCHELL, and MILLARD, JJ., concur.

BEALS, C. J., dissents.

## ON REHEARING.

### [*En Banc.* July 6, 1933.]

MITCHELL, J.—This cause was heard in a department of the court and a decision was reached. Thereafter, a rehearing was granted, and the cause has been heard *En Banc.*

The controversy arises out of a lease, dated February 5, 1927, executed by the Exeter Company, a corporation, as lessor, to the Moon Realty Company, a corporation (afterwards Holland Corporation, a corporation), to certain improved business property in Seattle for the term of ninety-nine years. The lessee took possession of the property and operated it.

Under the contract, the lessee agreed to pay a monthly rental in advance and all taxes, charges and assessments, general and special, on the property. Two other provisions of the lease of special importance here are as follows:

"(6) The lessee has, at the time of the execution of these presents, paid to the lessor the sum of thirty-five thousand dollars ($35,000) in cash as security to the lessor for the full performance on the part of the lessee of all the terms, covenants and conditions in this lease on the part of the lessee to be performed."

"(11) The whole amount of rent reserved and agreed to be paid hereunder, and each and every installment thereof, and all sums agreed hereunder to be treated as rent, and all reasonable costs and expenses, including attorney's fees which may be incurred in enforcing the provisions of this lease, or

on account of any delinquency of the lessee in carrying out any of the provisions of this lease, or incurred in defending claims or liens based upon acts of the lessee and asserted against the lessor's interest in said demised premises, shall be and they are hereby declared to be a first and valid lien upon all sub-rent or other income, issues and profits of the demised premises . . ."

The lessee failed to pay the monthly rent due June 1, 1931, and also failed and neglected to pay real property taxes due May 31, 1931; whereupon, on June 5, 1931, the Exeter Company brought this action to collect for such delinquencies. The Holland Corporation and its sub-tenants were made parties defendant. At the commencement of the action, the plaintiff obtained an order appointing a receiver, which order, upon a later hearing, was continued until the further order of the court, to collect, hold, and from time to time pay out, as the court ordered, the rents due and paid by the sub-tenants of the Holland Corporation. The receiver made such collections.

Later, the complaint was amended, among other things, by bringing in First Leasehold Corporation, a corporation, First Realty Corporation, a corporation, Realty Investment Corporation, a corporation, M. Ross Downs and his wife, and William Edris and his wife, as additional defendants. The amended complaint was supplemented, so that at the trial it included complaints as to other defaults and delinquencies at that time on the part of the lessee under the terms of the lease. The Holland Corporation and those spoken of as additional defendants filed answers, and the Holland Corporation a cross-complaint to which a reply was filed, and upon these issues trial was had without a jury.

Findings of fact, conclusions of law and judgment were entered for the plaintiff. The Holland Corpora-

tion has separately appealed; First Leasehold Corporation, First Realty Corporation and M. Ross Downs and wife have jointly appealed; and Realty Investment Corporation and William Edris and wife have jointly appealed.

The essential findings, in substance or in the language of the court, are as follows:

(3) That the corporations involved are doing business in this state; and there are further findings as to the marital relations of Mr. and Mrs. Downs and Mr. and Mrs. Edris.

(4) That, on February 5, 1927, the respondent leased the real property, describing it, to the Holland Corporation for ninety-nine years, according to the contract referred to and made a part of the findings.

(5) That the Holland Corporation has failed to pay any part of the monthly rentals for June, 1931, to July, 1932, in the total sum of $42,000, and failed to pay real property taxes on the property for 1930 and the first half of 1931; that David W. Baldwin has been appointed receiver for collecting sub-rentals of the property, so that the same might be subjected to respondent's lien under the lease, and to save them from being dissipated by the appellants; that the receiver has collected sub-rentals in the sum of $38,215.11, out of which, by order of court, he has paid taxes on the property in the sum of $6,015.47, and also paid $24,-471.53 for the purpose of repaying expenses and charges of operating the real property involved, leaving in the hands of the receiver the sum of $7,758.11 up to July 5, 1932, and also expended still another sum of $1,654.51.

(6) This paragraph sets out paragraphs 6 and 11 of the lease already mentioned above, and then states that respondent is in possession of the thirty-five thousand dollars, and has a first and valid lien thereon.

344

"(7) That the entire capital stock of the defendant Holland Corporation, a corporation, was at all the times herein referred to owned by the additional defendant, First Leasehold Corporation, a corporation; that the capital stock of the additional defendant First. Leasehold Corporation, a corporation, was at all the times herein referred to owned by the additional defendants, First Realty Corporation, a corporation, and Realty Investment Corporation, a corporation, said additional defendant First Realty Corporation owning 51% thereof and the additional defendant Realty Investment Corporation owning 49% thereof; that additional defendant William Edris was at all the times herein referred to president of additional defendant Realty Investment Corporation, a corporation, and a member of the board of trustees of the defendant Holland Corporation, a corporation; that additional defendant M. Ross Downs was at all the times herein referred to president of additional defendant First Realty Corporation, a corporation, president of additional defendant First Leasehold Corporation, a corporation, and president of defendant Holland Corporation, a corporation  . . ."

(8) That, in April, 1931, and prior thereto, the Holland Corporation was unable to earn sufficient sub-rentals to meet the payments required to be made by it, that it had no other assets with which to pay its obligations under the lease, and would continue to be unable to pay such obligations, which facts were known to the additional defendants First Leasehold Corporation, First Realty Corporation, Realty Investment Corporation, M. Ross Downs and William Edris, all of whom at that time knew of the provision in paragraph 11 of the lease that the Exeter Company had a lien on all sub-rents and income from the property for all unpaid rents or other obligation; and that, at that time, the Holland Corporation's leasehold interest in the premises had been conveyed by it to the Bank of California, N. A., as trustee under a mortgage, for the

purpose of securing an issue of bonds, all of which bonds were then and at all times during the transactions herein involved owned by additional defendant Realty Investment Corporation.

"(9) That during the month of April, 1931, and prior to the 25th day thereof, defendant Holland Corporation, a corporation, having been unsuccessful in previous endeavors to secure from plaintiff an agreement reducing the monthly rentals specified in said lease or a moratorium therefor, decided to abandon the premises so leased by it and to pay no further rent or other obligations under said lease; that at said time Henry P. Russell, Lawrence Miller, C. R. C. Steers, Harry B. Butcher, William G. Devereaux, George G. Bass, John Clark Burgard and W. G. Van Pelt, copartners doing business as Russell, Miller & Company were tenants of the defendant Holland Corporation, a corporation, occupying the second floor of said demised premises under a written indenture of lease executed March 31st, 1930, said lease providing for a monthly rental of $550 and running for a period of eight years and ten months from the date of the execution thereof. That said copartnership doing business as Russell, Miller & Company are and were entirely solvent and that said lease between said copartnership and said defendant Holland Corporation, a corporation, had on the 25th day of April, 1931, a fair cancellation value of $10,000. That for the purpose of fraudulently voiding and thwarting and causing plaintiff to lose its lien upon the sub-rents, issues and profits of said demised premises, and with the further object of effecting a cancellation of said sublease with said copartnership doing business as Russell, Miller & Company, to the end that the lease of the defendant Holland Corporation, a corporation, with the plaintiff and the premises therein described might be abandoned by said defendant Holland Corporation, a corporation, in a debilitated and worthless condition, and with knowledge of the priority of plaintiff's claim of lien upon the sub-rents, issues and income of said demised premises, the defendant Holland Corporation, a corporation, and the additional defendants herein,

did on the 25th day of April, 1931, acting in concert and in conspiracy, caused to be cancelled by the defendant Holland Corporation, a corporation, for the sum of $10,000, said sublease with said copartnership doing business as Russell, Miller & Company, said sum of $10,000 being paid said defendant Holland Corporation, a corporation, on said date.

"(10) That thereafter and on, towit, the 26th day of May, 1931, pursuant to said conspiracy and in furtherance of the objects thereof, the additional defendants Realty Investment Corporation, a corporation, First Leasehold Corporation, a corporation, First Realty Corporation, a corporation, William Edris and M. Ross Downs, and the defendant Holland Corporation, a corporation, paid and caused to be paid said sum of $10,000 received from said copartnership doing business as Russell, Miller & Company, to the Bank of California, N. A., as trustee under the mortgage hereinabove referred to; that thereafter and on to-wit, the 2nd day of June, 1931, said additional defendants pursuant to said conspiracy and in order to effect the objects thereof, caused said Bank of California, N. A., to pay said sum of $10,000 to additional defendant Realty Investment Corporation, a corporation, ostensibly for the purpose of redeeming ten of the bonds owned by said Realty Investment Corporation, a corporation, and secured by a mortgage upon the leasehold interest of the defendant Holland Corporation, a corporation, but in reality for the purpose of placing said cancellation moneys beyond the reach of plaintiff's lien and unlawfully converting the same.

"(11) That defendant Holland Corporation, a corporation, caused the rental due plaintiff under said lease on May 1st, 1931, to be paid plaintiff upon said date for the purpose of facilitating and carrying out its plan and the plan and scheme of the additional defendants herein of converting and disposing of said cancellation moneys in the manner aforesaid, and that said Holland Corporation, a corporation, on said date and at all times thereafter had no intention of paying any further rent under said lease or of performing any of the other obligations required by it to be performed under the terms thereof and intended to and

did abandon said premises. That the appointment of the receiver herein on June 5th, 1931, solely for the collection of the sub-rentals, was necessary for the purpose of preventing the defendant Holland Corporation, a corporation, and the additional defendants herein from dissipating said subrentals and for the purpose of preserving the same so that they might be subject to plaintiff's lien for unpaid rent and other obligations and that defendant Holland Corporation, a corporation, having previously abandoned said premises, was not evicted by the appointment of said receiver. That on the 17th day of June, 1931, defendant Holland Corporation, a corporation, although it had previously and during the month of April, 1931, decided to abandon said premises and give up said lease, as hereinabove recited, actively carried out said intention by discharging its employees on said premises and by delivering the keys thereof to plaintiff, The Exeter Company, a corporation, and that at all times subsequent to the 17th day of June, 1931, plaintiff The Exeter Company, a corporation, has been in possession of said premises and collecting the rentals thereof through the receiver, David W. Baldwin, for the account of said defendant Holland Corporation, a corporation, for the purpose of minimizing the loss sustained and to be sustained by plaintiff under said lease by reason of the continuing breaches of the terms thereof by defendant Holland Corporation, a corporation.''

Upon an examination of the testimony, we are convinced that, while there are some conflicts, it clearly preponderates in favor of the findings made by the trial court, and, in addition to the facts just enumerated, the testimony clearly shows:

(1) That the Holland Corporation and the additional corporations who were associated with it and each other in this whole transaction had interlocking directorates; (2) that the bank knew, when it received the ten thousand dollars, that it was the compromise rent money paid by Russell, Miller & Company to the

Holland Corporation; (3) that, according to the understanding of, and by direction of, the parties interested (other than the Exeter Company), the bank paid the ten thousand dollars over to the Realty Investment Corporation, which still has the money, for aught the record shows; and (4) that the bonds paid off with the ten thousand dollars were the obligations of First Leasehold Corporation and others.

The judgment, in accordance with the findings of fact, is, in substance, that the Exeter Company have judgment against the Holland Corporation in the sum of $43,654.51 (less $7,758.11, which the receiver is directed to pay the Exeter Company to be applied on the judgment), and an attorney's fee of four thousand dollars; that such judgment constitutes a first lien on the ten thousand dollars paid the Holland Corporation by Russell, Miller & Company; that the Exeter Company have judgment in the sum of ten thousand dollars against the additional defendant corporations and Downs and wife and Edris and wife, which, upon collection, shall be applied on the judgment awarded against the Holland Corporation; and that the judgment against the Holland Corporation constitutes a first lien on the security deposit of thirty-five thousand dollars, made by the Holland Corporation under the lease, which, or so much as may be necessary to satisfy the judgment, the Exeter Company is authorized to apply on the judgment and to retain the balance of the security deposit as security for future breaches and failures under the lease.

It is claimed by appellants Holland Corporation, First Leasehold Corporation, First Realty Corporation, and Downs and wife, that the court erred in holding the respondent had a lien in the sum of $39,896.40 on the thirty-five thousand dollar lease deposit and the sub-rents of the building. However, there was

that amount due the respondent, under the terms of the lease, at the date of the judgment, and the thirty-five thousand dollars was placed in the hands of the respondent as security for the performance, on the part of the lessee, of all the terms and covenants in the lease on the part of the lessee to be performed; also, the lease contract, in so many words, provides for a lien on the sub-rents.

The same appellants further contend that the court erred in refusing to hold that the Holland Corporation was evicted by the respondent by the appointment of a receiver on June 15, 1931, at the instance of the respondent. The receiver, however, was appointed for a limited purpose only, to receive the rents and income subject to the order of the court. It was an orderly judicial proceeding to keep the Holland Corporation, the lessee, from dissipating and diverting such income from payments due the respondent under the terms of the lease. The respondent did not seek to either cancel the lease or get possession of the building. The respondent or any of its agents did not attempt to take possession of any portion of the building, nor in any manner deprive the sub-tenants of their rights of occupancy. The procedure was not personal, but through the courts, as was clearly contemplated by the provision in the lease giving the lessor a lien on all the sub-rents and income—a remedy in the court wholly inconsistent with an eviction.

Upon further consideration since the former hearing, we are satisfied that to treat the appointment by the superior court, a court of general jurisdiction, of a receiver for the limited purpose mentioned in this case as constituting an eviction, would be going too far, and would, in effect, destroy the provision in the contract giving the landlord a lien on the sub-rents and income. The exercise, in a case of this kind, through judicial

proceedings, of a remedy or right given by a contract does not amount to an eviction. To the extent of the receiver's limited services as collector of the rents, he was the agent of the court and not of the lessor. Rem. Rev. Stat., § 740. "He is but an arm of the court, and his acts and doings as receiver are the acts and doings of the court." *Cole v. Washington Motion Picture Corporation,* 112 Wash. 548, 192 Pac. 972.

The authorities cited by appellants are not in point. None of them involved an act or remedy authorized by the contract. In *Wusthoff v. Schwartz,* 32 Wash. 337, 73 Pac. 407, the landlord materially altered the building leased, greatly depriving the tenant of the beneficial *use* of it. *Tennes v. American Building Co.,* 72 Wash. 644, 131 Pac. 201, was a case of a landlord suing out an injunction that prohibited the tenant from the use and enjoyment of a substantial part of the premises. In *Brewster Cigar Co. v. Atwood,* 107 Wash. 639, 182 Pac. 564, the owner of the property materially changed it so as to interfere with the substantial enjoyment of it by the tenant. In *Northern Brewery Co. v. Princess Hotel,* 78 Ore. 453, 153 Pac. 37, Ann. Cas. 1917C, 621, the tenant in possession was evicted by the receiver "pursuant to the order of the court." In *Telegraph Ave. Corporation v. Raentsch,* 205 Cal. 93, 269 Pac. 1109, 61 A. L. R. 366, an unlawful detainer action, the receiver took actual possession of the premises by order of the court. Here, as already stated, the receiver in no way disturbs the use of the building, but only collects and preserves the rents.

After the appointment of the receiver, the Holland Corporation, without right, abandoned the premises, whereupon the respondent, expressly without intending or attempting to terminate the lease, took charge of the building, in order to keep the rooms rented, for and on behalf of the Holland Corporation, so as to

reduce as much as possible the damages for breach of the lease by the Holland Corporation. *Martin v. Siegley,* 123 Wash. 683, 212 Pac. 1057; *Crescent Mfg. Co. v. Friedenthal,* 124 Wash. 682, 215 Pac. 19; *Washington Securities Co. v. Oppenheimer & Co.,* 163 Wash. 338, 1 P. (2d) 236. During this time, the receiver collected the rents, and, by order of the court, paid taxes on the property and charges and expenses in the operation of the property. The holding of the trial court that there was no eviction in this case was proper.

The Realty Investment Corporation and William Edris and wife assign as errors the denials of motions and the overruling of demurrers that a number of causes of action were improperly united in the amended complaint. We think not. A similar contention was made in *Headrick v. Martin,* 158 Wash. 238, 290 Pac. 994, of which the court said:

"But we think this contention is without substantial merit. There seems to be but one cause of action, i. e., that for the recovery of money; and if, by reason of the peculiar facts, the claimant has also lien rights of an equitable nature, it would seem to be for the benefit of all concerned that the whole controversy be decided in one action."

See, also, *Stewart v. Pacific Finance Co.,* 87 Wash. 484, 151 Pac. 1092.

All of the appellants assign as error the holding that the respondent had a lien on the ten thousand dollars received from Russell, Miller & Company, and the giving of judgment therefor against those who assisted in misappropriating it. That fund was property, not of an intangible sort, already received by the lessee as income from the premises demised. The lease in specific language gave a lien on all income, a provision which was well known to every one of these judgment debtors, and it is difficult to appreciate a

claim of error because the judgment recognizes that lien.

As to the complaint of giving judgment against the appellants, the evidence shows, without contradiction, that the officers of all of these corporations, acting together for their pecuniary benefit, as the trial court found, passed this money through the bank by special control and direction of appellants, including the Realty Investment Corporation, whose president testified at the trial as follows:

"Q. What did the Realty Investment Corporation do with the $10,000 it received in the redemption of these bonds? A. I have no idea. Q. Have they still got that $10,000? A. I cannot answer that, either."

The tortious acquisition of property by one or more persons gives to neither any right or title to it. In this case, surely some one or more is responsible; and if the Realty Investment Corporation, to which the fund has been traced, refuses or fails to restore it, those responsible must suffer judgment against them.

Personal judgment against the lessee is proper because of its contract with the respondent, while, as to the other appellants, the applicable rule was announced in *American State Bank v. Sullivan,* 134 Wash. 300, 235 Pac. 815: "Where," as tersely stated in the appropriate syllabus,

". . . a lessee and a bank appropriated the landlord's portion of a crop of wheat, both having notice of the landlord's lien for rent and liable for the conversion, the bank cannot complain of a personal judgment against it."

To the same effect, see 37 C. J. 342, § 67, as follows:

"Where property subject to a lien is taken and converted by a third person, the lienor's proper remedy is to proceed in equity to fix his lien on the property or its proceeds in the hands of the wrongdoer, unless he

had the right to immediate possession of the property, in which case he may sue at law for the conversion.''

To the contrary, appellants cite *Nelson v. Nelson Neal Lumber Co.*, 171 Wash. 55, 17 P. (2d) 626, and contend that the right to an equitable lien is insufficient to maintain an action for conversion of goods covered by such lien. That case, however, is easily distinguishable from the present one. That action was brought by stockholders of the Nelson Neal Lumber Company to recover for themselves and the corporation, and was determined by the sustaining of a demurrer to the second amended complaint, in which it was alleged, in substance, that the Nelson Neal Lumber Company, by conditional sale contract, reserving title, sold its mill, machinery and logging equipment to the Montborne Lumber Company; that the contract provided that the vendee should keep the property, including the buildings, insured, loss, if any, to be payable to the vendor as its interest might appear; that the vendee and its officers refused to provide such insurance, but wrongfully took out insurance simply payable to itself, the vendee; that the property was destroyed by fire, and the vendee, the insured, collected the money; that the vendee and its officers refused, upon demand, to turn the insurance money over to the Nelson Neal Lumber Company; and hence the suit to declare in favor of plaintiff an equitable lien on the insurance moneys and for judgment against the officers of the Montborne Lumber Company, who collected the money. The Montborne Lumber Company was not made a party to the action.

The lien claimed in that action was purely equitable, and required oral proof and a decree to establish it. In the present case, no proof was needed to establish the lien. It was a contract lien, as was known by all

of the appellants. In that case, there was no change of possession, the funds at all times being in the hands of those the insurance company had contracted to pay in case the property was destroyed by fire; here, there was a change of possession of the fund from the Holland Corporation, who rightly received it from Russell, Miller & Company, by wrongfully diverting it through the bank to the Realty Investment Corporation.

But, whatever may be the distinctions and refinements in remedies elsewhere, or at the common law, in this state there is but one form of action for the enforcement or protection of private rights and the redress of private wrongs (Rem. Rev. Stat., § 153); and it is the general rule, applicable here, that, if one prevails, he is entitled to that relief demanded by the proof. Accordingly, in this case, whether treated as technical conversion or impairment of the right of a contract lien by those having knowledge of the lien (in legal effect the same as *American State Bank v. Sullivan,* 134 Wash. 300, 235 Pac. 815), the result is the same—those who have committed the wrong must be held responsible.

It is further argued that there should be no judgment against Mr. and Mrs. Downs and Mr. and Mrs. Edris. However, the record and evidence in this case abound with admissions on the part of Mr. Downs and Mr. Edris, and proof from other witnesses to the same effect, from which it is certain that Mr. Downs and Mr. Edris took an active part in the whole plan relating to the ten thousand-dollar-fund, which resulted, as it manifestly was intended to result, in benefit to corporations of which they were and are officers and stockholders, thus creating personal obligations against themselves and community obligations against them and their wives.

The Departmental opinion in this case is overruled and set aside. The judgment appealed from is affirmed.

BEALS, C. J., BLAKE, TOLMAN, HOLCOMB, MILLARD, STEINERT, and MAIN, JJ., concur.