**UNITED STATES of America,**
**Plaintiff,**

v.

**Felix Benítez REXACH, the Escambron Development Company, Rene Benitez, Modesto Bird, Felix Benítez Rexach, Jr., Lucienne Dhotelle De Benítez Rexach, Luis Antonio Miranda, and Cruz Montes, Defendants.**

Civ. No. 112–65.

United States District Court
D. Puerto Rico.
Sept. 29, 1966.

John J. McCarthy, Jerome H. Fridkin, Dept. of Justice, Washington, D. C., Francisco A. Gil, Jr., U. S. Atty., San Juan, P. R., for plaintiff.

Walter Newsom, Jr., Enrique Córdova-Díaz, René Benítez, San Juan, P. R., for defendants.

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

CLEMENTE RUIZ-NAZARIO, Chief Judge.

This action having been tried without a jury, the Court having considered the testimonial and documentary evidence adduced, as well as argument of counsel, and being fully advised in the premises, hereby makes the following:

### FINDINGS OF FACT

1. This cause of action is brought pursuant to Sections 7401, 7402, and 7403 of the Internal Revenue Code of 1954, and pursuant to Sections 1340 and 1345 of Title 28 of the United States Code, for the purpose of setting aside, on the grounds of fraud, two judgments previously entered by this Court wherein it adjudicated the federal tax liability of the defendant, Felix Benítez Rexach, for the years 1951–1958, and for the purpose of reinstating the plaintiff's tax claims and tax liens for the said years, and for the purpose of foreclosing the tax liens for said years on the property owned by the defendant, Felix Benítez Rexach.

2. This action has been requested by the Commissioner of Internal Revenue, who is a delegate of the Secretary of the Treasury of the United States; and this action is being brought under the direction of the Attorney General of the United States.

3. The defendant, Felix Benítez Rexach, is an American citizen residing in Puerto Rico, within the jurisdiction of this Court.

4. On February 5, 1958, a delegate of the Commissioner of Internal Revenue assessed income tax deficiencies against

the defendant, Felix Benítez Rexach, for the calendar years 1951 through 1956 inclusive, in the amounts set forth below. Notice of these assessments and demands for payment of these assessments were served and made upon Felix Benítez Rexach on March 3, 1958. However, Felix Benítez Rexach failed to pay these assessments so that as of March 3, 1958, the sums allegedly due and owing on each of the assessments were allegedly in the amounts set forth below:

| Tax Year | Tax Assessed and Due on March 3, 1964 | Penalty Assessed and Due on March 3, 1964 |
|----------|---------------------------------------|-------------------------------------------|
| 1951 | $ 258,912.96 | $283,009.52 |
| 1952 | 102,401.82 | 92,149.49 |
| 1953 | 154,307.91 | 138,864.96 |
| 1954 | 290,049.28 | 189,240.68 |
| 1955 | 316,207.88 | 166,954.23 |
| 1956 | 269,884.34 | 142,495.41 |
| Total | $1,391,764.19 | $962,714.29 |

On March 3, 1958, plaintiff filed a complaint in this Court to reduce the outstanding balance of $2,354,478.48 allegedly due on these assessments to judgment and to foreclose the tax liens securing the assessments on certain property of Felix Benítez Rexach. This suit was captioned United States of America v. Felix Benítez Rexach, et al., Civil Action No. 72–58.

5. On June 22, 1959, a delegate of the Commissioner of Internal Revenue assessed income tax deficiencies against Felix Benítez Rexach for the calendar years 1957 and 1958 in the amounts set forth below. Notice of these assessments and demands for payment of these assessments were served and made upon Felix Benítez Rexach on June 22, 1959. However, Felix Benítez Rexach failed to pay these assessments so that as of June 22, 1959, there was allegedly due and owing on these assessments the amounts set forth below:

| Tax Year | Tax | Penalties | Interest |
|----------|-----|-----------|----------|
| 1957 | $175,007.43 | $87,574.59 | $12,451.90 |
| 1958 | 30,963.89 | | 345.49 |
| Total | $205,991.32 | $87,574.59 | $12,797.39 |

On February 26, 1960, plaintiff filed a complaint in this Court to reduce the outstanding balance of $306,363.30 allegedly due on these assessments to judgment and to foreclose the tax liens securing these assessments on certain property of Felix Benítez Rexach. This suit was captioned United States of America v. Felix Benítez Rexach, et al., Civil Action No. 52–60.

6. On February 21, 1962, this Court entered its judgment in favor of the defendant, Felix Benítez Rexach, in Civil Action No. 52–60, whereby this Court adjudged that nothing was due and owing on the assessments for 1957 and 1958. On February 21, 1962, this Court entered its judgment in Civil Action No. 72–58, which judgment was amended on August 7, 1962, by this Court, whereby this

Court adjudged that only $121,132.13, tax and interest, was due and owing on the assessments for years 1951 through 1956, inclusive; this judgment was satisfied by payment of the amount adjudged to be due and owing.

7. Plaintiff in the present action seeks relief from the judgments in Civil Actions Nos. 72–58 and 52–60, and from the stipulations filed in said actions, on the ground that defendant, Felix Benítez Rexach allegedly obtained said judgments by practicing a fraud and deception upon the Court by fraudulently and willfully, with intent to deceive, failing to disclose to plaintiff and the Court in Civil Nos. 72–58 and 52–60, three construction contracts which he executed and for which he was paid the Contract price in the Dominican Republic during the years adjudicated in the aforementioned actions.

8. By stipulation of the parties, dated 10 November 1965, approved by order of the Court of even date, the issue of fraud was heard separately.

9. During the years adjudicated in Civil Nos. 72–58 and 52–60, defendant Felix Benítez Rexach executed, and was paid for, the following contracts in the Dominican Republic, in addition to the Contracts which were the subject of litigation in the above numbered actions:

(a) A Contract of April 1, 1952, in the amount of $300,000.00 providing for a 200 foot extension of the breakwater in Río Haina harbor for the Río Haina Sugar Mill.

(b) A Contract of March 1, 1951, in the amount of $340,000.00 providing for dredging for the Barahona Sugar Mill.

(c) A Contract of April 13, 1951, in the amount of $700,000.00 providing for the construction of a warehouse for the Río Haina Sugar Mill.

10. None of the contracts (a), (b), and (c) described in Finding No. 9 were published in the Official Gazette of the Dominican Republic, the official publication where all public construction contracts had to be published under Dominican Law.

11. During the course of discovery proceedings in Civil No. 72–58, the following questions were propounded to defendant, Felix Benítez Rexach, in a deposition taken on April 16–17, 1958, and he answered as follows:

"Q. Did you have any other contracts with the Dominican Government during the period 1951 to 1956, exclusive of the exhibit contracts you have just identified?

A. I think so. I have one other under construction now but that was not signed then.

Q. Did you receive any payments on any other contract between 1951 and 1956 except what you have testified about here?

A. Only that.

Q. Did you have any other income from any sources whatsoever during 1951 to 1956 except income from these contracts?

A. Just from those contracts and a little income from the operation of one ship I have there which is part of the equipment.

Q. How much income did you receive from the ship?

A. Very small.

Q. Could you give us some idea?

A. $10,000 or $12,000 per year for the year 1957.

Q. I am asking you about 1951 to 1956. You didn't have any income from any other source from 1951 to 1956?

A. I didn't have any."

12. Defendant kept untidy records in a shack in the Dominican Republic. Upon being informed that U. S. Government Officials proposed to go to the Dominican Republic to check on the payments made to him during the years 1951 to 1956, he advised that he would not be willing to give them a letter of consent to the Dominican Officials for the purpose of

an examination of his records on the ground that this was a matter between the U. S. Government and the Dominican Republic.

13. On August 12, 1958 an expedition headed by Homer Miller, Esq., a Trial Attorney for the Department of Justice, Tax Division, who was representing the Government in Civil Nos. 72–58 and 52–60, repaired to the Dominican Republic for the purpose of investigating the affairs of defendant Felix Benítez Rexach in said cases, who is also defendant in the present action. Mr. Miller was accompanied by two experts, witnesses, and a special agent, who were physically to observe the defendant's construction projects, specifically with a view to determining his costs and profits in performing said construction projects.

14. After checking in at their hotel, Mr. Miller's party went to Mr. Spalding, American Charge d'Affaires in the Dominican Republic, and stated the purpose of their visit. The Charge d'Affaires made an appointment with the Dominican Charge d'Affaires to discuss the purpose of the Miller party, and to arrange their registration as required by Dominican Law. The next morning Mr. Miller, Mr. Brewer, Mr. Goodenough, and Mr. Henry Armstrong called upon Mr. Luis Suerco, the Dominican Attorney General. Mr. Brewer was a special Agent who had investigated defendant's tax liabilities, and he was in the party for the purpose of examining any records or books and checking up on the assessments he, Brewer, had recommended. Mr. Armstrong was present as a potential expert witness who would testify as to what percentage of the amounts which the taxpayer Felix Benítez Rexach received, represented net income to him.

He was to look at the constructions, determine what the costs of the contracts were, and examine any of the contracts, plans, and specifications that were made available. But primarily, he was to look at the constructions themselves. He was an engineer in the employ of the U. S. Army. Mr. Goodenough was the head of a private firm, and he was engaged in making investigations of constructions, testifying, and rendering reports. He had been employed by the Government of the United States to make an investigation of the cost of the contracts involved in Civil Nos. 72–58 and 52–60 and to testify in court.

15. An interview with the Dominican Attorney General was arranged for Mr. Miller. The Attoney General informed him that he should state the things he wanted to investigate in the Dominican Republic in a letter. Mr. Miller prepared the letter, but did not deliver it to the Attorney General, because on the day after he wrote it, he was informed by Mr. Spalding, of the American Embassy, that he, Spalding, had received a call from the Foreign Minister of the Dominican Republic advising him that there would be no tax investigation in the Dominican Republic. Mr. Miller then returned to Puerto Rico with Messrs. Armstrong, Brewer, and Goodenough.

16. The refusal of the Dominican authorities to permit a tax investigation by the United States officials was not the result of any connivance or conspiracy between defendant, Felix Benítez Rexach, and the Dictator Trujillo.[1]

17. On February 21, 1961, this Court entered its Findings of Fact and Conclusions of Law in Civil Action No. 72–58, based on a stipulation between defendants and the United States. A judg-

1. As Trujillo had his finger in every pot in the Dominican Republic, there is every reason to believe that he would not welcome any such investigation by representatives of a foreign nation for reasons personal to him, without any urging by defendant. Indeed, it is more logical to attribute defendant's refusal to give formal consent to any such investigation was due to a fear of reprisals by the ruthless "Benefactor" rather than fraudulent purpose in connection with his taxes.

ment for $121,132.12 was entered, covering assessments for the years 1951 to 1956, which was amended on August 7, 1962. The said judgment was satisfied by payment.

18. After the assassination of Trujillo in 1962, the Dominican authorities permitted an investigation of the affairs of defendant, Felix Benítez Rexach, by United States officials. Mr. Armstrong, of the original expeditionary force under Mr. Miller, went to Santo Domingo accompanied by Benjamín Súarez, an Internal Revenue Agent.

19. During the course of the investigation referred to in the preceding Finding of Fact No. 18, plaintiff's agents discovered the existence of the three contracts mentioned in Finding of Fact No. 9, which had not been disclosed to plaintiff in the discovery proceedings in Civil No. 72–58.

20. The ten contracts admitted by defendant, Felix Benítez Rexach, in the Civil No. 72–58 discovery proceedings, amounted to over $34,891,318.00, constituting 96 percentum of all the work performed by said defendant during the years involved in that case; said defendant's answers during discovery proceedings were based on an examination of his inadequate, informal and untidy records and records of the Dominican Republic by his accountant and his best recollection. At the time of said discovery, he was seventy years old. He disclosed two contracts in addition to the original ten.

21. The Court finds as a fact that at the time defendant, Felix Benítez Rexach, gave the answers quoted in Finding of Fact No. 11, said defendant honestly and truly believed that the contracts he had listed previously, were the only contracts he had performed, and that he was unable to recollect them because of his inadequate records, with which he could have refreshed his memory, coupled to the further fact that he was confused, as he understood them to be not independent contracts to be listed separately or individually, but rather extensions of contracts already listed.

22. Said defendant's failure to list the said three contracts mentioned in Finding of Fact No. 9 was an honest mistake, the omission was in good faith, and did not constitute extrinsic fraud.

23. Plaintiff's inability to include the three contracts described in Finding of Fact No. 9 as a part of its case in Civil Actions Nos. 72–58 and 52–60 was not caused by any willful, fraudulent concealment of same by defendant, Felix Benítez Rexach.

24. Plaintiff was not prevented from fully exhibiting its case in Civil Nos. 72–58 and 52–60 by any fraud or deception of defendant Felix Benítez Rexach.

## CONCLUSIONS OF LAW

I. The acts for which a court of equity will on account of fraud set aside or annul a judgment or decree between the same parties, rendered by a Court of competent jurisdiction, have relation to frauds, extrinsic or collateral to the matter tried by the first Court, and not to a fraud in the matter on which the decree or judgment was rendered.

II. The cases where such relief has been granted are those in which, by fraud or deception practiced on the unsuccessful party, he has been prevented from exhibiting fully his case, by reason of which there has never been a real contest before the Court of the subject matter of the suit.

III. Fraud is regarded as extrinsic or collateral where it prevents a party from having a trial or from presenting his cause of action or his defense, or induces him to withdraw a defense, or operates upon matters pertaining not to the judgment itself but to the manner in which it was procured.

IV. The action to set aside the judgments in Civil Actions Nos. 72–58 and 52–60, must be dismissed.

San Juan, Puerto Rico, September 29, 1966.