373 F.Supp. 705 (1973)
Donald M. NELSON, Plaintiff,
v.
Wilbur J. SCHMIDT et al., Defendants.
Blaine L. ATKINSON, Plaintiff,
v.
Wilbur J. SCHMIDT et al., Defendants.
Nos. 71-C-70, 71-C-369.
United States District Court, W. D. Wisconsin.
December 14, 1973.
*706 James H. Petersen, Asst. Atty. Gen. (under Atty. Gen., Robert Warren), Madison, Wis., for defendants.
Michael S. Weiden, Madison, Wis., for plaintiff Donald M. Nelson.
Anthony J. Theodore, Corrections Legal Services program, Madison, Wis., for plaintiff Blaine Atkinson.

OPINION AND ORDER
JAMES E. DOYLE, District Judge.
These are civil actions for injunctive relief. Plaintiffs have been granted leave to proceed in forma pauperis. 28 U.S.C. § 1915. Jurisdiction is invoked in each case pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.
In 71-C-70, plaintiff Nelson alleges that he is presently confined in the Wisconsin State Prison, Waupun; that on September 15, 1970, plaintiff was notified by defendants that "almost nine months" of his accumulated good time had been forfeited; that defendants stated this forfeiture was based upon the same act for which plaintiff had already been punished by a state court; that defendants ordered this forfeiture without providing plaintiff with prior notice, a hearing, or assistance of counsel.
In 71-C-369, plaintiff Atkinson alleges that on September 12, 1970 he was confined at the Oregon State Farm, Oregon; that prior to that date plaintiff had accumulated good time credits; that on that date plaintiff escaped from the state farm and was retaken into custody; that on September 24, 1970, plaintiff was convicted of escape and sentenced to three years' imprisonment; that plaintiff was thereupon confined in the Wisconsin State Reformatory, Green Bay; that subsequent to plaintiff's confinement at Green Bay, defendants caused him to be deprived of the good time which he had accumulated at the Oregon State Farm without providing him with prior notice, a hearing, or assistance of counsel.
Plaintiffs Nelson and Atkinson contend that the imposition of administrative punishment upon them, subsequent and in addition to the criminal sentences imposed for the same acts, violated the constitutional prohibition against double jeopardy; and that the procedures that resulted in the forfeiture of their good time did not satisfy due process requirements. Defendants in each case moved to dismiss the complaint for failure to state a claim upon which relief could be granted. I dismissed the complaints with respect to the claims of double jeopardy and refused to dismiss them with respect to the claims of denial of procedural due process. Defendants in each case thereupon served and filed an answer.

JURISDICTION
Defendants have now filed a new motion to dismiss on the ground that the court lacks jurisdiction over the subject matter. The motion is timely under Rule 12(h)(3), Fed.R.Civ.P. The motion *707 is based on the holding in Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), that prisoners' suits seeking restoration of good time are governed by the more specific habeas corpus statutes 28 U.S.C. §§ 2241, 2254, even though they come within the broad language of 42 U.S.C. § 1983. Therefore, prisoners' good time suits in federal courts must satisfy the exhaustion-of-state-remedies requirement of 28 U.S.C. § 2254(b).
The exhaustion requirement has long been viewed as an expression of deference in areas of primary state concern, not as a jurisdictional limitation. Fay v. Noia, 372 U.S. 391, 420, 83 S.Ct. 822, 839, 9 L.Ed.2d 837 (1963):
The rule of exhaustion "is not one defining power but one which relates to the appropriate exercise of power." Bowen v. Johnston, 306 U.S. 19, 27 [59 S.Ct. 442, 446, 83 L.Ed. 455]. Cf. Stack v. Boyle, 342 U.S. 1 [72 S.Ct. 1, 96 L.Ed. 3; Frisbie v. Collins, 342 U.S. 519 [72 S.Ct. 509, 96 L.Ed. 541]; Douglas v. Green, 363 U.S. 192 [80 S. Ct. 1048, 4 L.Ed.2d 1142].
A federal district court has jurisdiction of a complaint seeking recovery under the Constitution or laws of the United States, provided the federal claim is not frivolous and not fradulently contrived to obtain jurisdiction. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).[1] Since the present complaints claim violation of 42 U.S.C. § 1983 and the due process clause of the Fourteenth Amendment, they satisfy jurisdiction under 28 U.S.C. § 1343(3) and also under 28 U.S.C. § 2241(a), 2241(c)(3).

RETROACTIVITY
Although defendants' motions are expressed in terms of lack of jurisdiction over the subject matter, their reliance upon Preiser is so clear that I see no unfairness to the plaintiffs in considering the motion as a non-jurisdictional motion. Accordingly, I will construe the defense motion in each case as containing a motion for leave to amend the answer to add the defense of failure to exhaust state remedies. I will also construe each motion as containing a motion for judgment on the amended pleadings. The motion to amend is granted and I turn to the question whether Preiser should apply retroatively so as to require dismissal of the present actions. I conclude that Preiser established a new rule of law and that evaluation of the appropriate criteria requires that Preiser not be applied retroactively in these cases.

A New Rule
Although Preiser does not overrule any prior Supreme Court decision, it is a sharp departure from the direction of recent decisions in prisoners' § 1983 actions. Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), held that a state prisoner need not exhaust administrative remedies before seeking relief under § 1983 for confiscation of his legal materials by prison officials. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), held that prisoners' challenges to prison living conditions and disciplinary measures are cognizable under § 1983. It added (251, 92 S.Ct. 409): "State prisoners are not held to any stricter standard of exhaustion than other civil rights plaintiffs. Houghton v. Shafer, [supra]."
Prior to Preiser, I had held that challenges to denial of good time credits could be maintained under § 1983. In Edwards v. Schmidt, 321 F.Supp. 68 (W.D.Wis., 1971), I distinguished the categories of "extraordinary prisoner suits" and "traditional habeas suits." The latter were directed against state court judgments; the former against other governmental action. An action seeking restoration of good time credits *708 would clearly have fallen into the "extraordinary prisoner suit" category.
Under the guidelines on non-retroactivity set out in Chevron Oil v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), a new rule of law is established "by deciding an issue of first impression whose resolution was not clearly foreshadowed." 404 U.S. at 106, 92 S.Ct. at 355. In light of Houghton, Wilwording, and Edwards, I conclude that Preiser represents a new rule of law.

Criteria for Retroactivity of a New Rule
Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), set out criteria for determining whether new constitutional rulings on criminal process should be applied retroactively. The Linkletter/Stovall criteria call for evaluation of (1) the purpose of the new rule, (2) reliance on the old rule, and (3) the effect on the administration of justice which would flow from retroactive application of the new rule. Linkletter, 381 U.S. at 636, 85 S.Ct. 1731;[2]Stovall, 388 U.S. at 297, 87 S.Ct. 1967. These criteria have been adopted in the civil area, in both constitutional and nonconstitutional cases. See Chevron Oil v. Huson, 404 U.S. 97, 106-108, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).
Stovall made clear that retroactive application may be denied in cases pending but not decided at the time of the enunciation of the new rule. See also Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). It denied application of the rule announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), to identifications which took place prior to the date of the Wade/Gilbert decisions.[3]Linkletter had concerned only retroactive application to judgments already final on the date the new rule was announced.[4]

The Criteria Applied to Preiser

Purpose
Decisions applying the Linkletter/Stovall criteria to new constitutional rulings on criminal process have first examined the purpose served by the new rule. Where the purpose at stake was the integrity of the truth-finding function, retroactivity was strongly indicated.[5] Where the purpose was deterrence *709 of illegal police conduct, prospectivity was strongly indicated.[6] The stated purpose of the new rule announced in Preiser is to give a state court system the first opportunity to correct any error made by state officials in the "peculiarly local problems" of determining the propriety of physical confinement itself, or the duration of such confinement, in a state institution. Preiser, 411 U.S. at 498, 93 S.Ct. 1827. Neither the decisions dealing with the integrity of the truth-finding function nor those dealing with deterrence of police misconduct provide guidance in the present matter. The purpose of the new rule announced in Preiser does not strongly indicate retroactivity or prospectivity. Therefore, I must turn to the criteria of reliance and of the effect on the administration of justice.

Reliance
When plaintiffs commenced these actions in 1971, they could have relied on my then recent ruling in Edwards v. Schmidt, 321 F.Supp. 68 (W.D.Wis. 1971), that a § 1983 action was appropriate to challenge any violation of federal rights by prison officials. I must also consider that plaintiffs were laymen proceeding without counsel. They probably would have placed more trust than a lawyer in the finality of a district court decision. In addition, they would have been likely to have read § 1983 according to its broad wording. Revocation of good time, in violation of federal constitutional rights, would clearly have come within the wording of the statute.
This reliance would have been reinforced by the Supreme Court's decision in Wilwording v. Swenson, supra, late in 1971. In the en banc hearing on Preiser before the Court of Appeals for the Second Circuit, both Chief Judge Friendly and Judge Kaufman would have summarily affirmed the propriety of a good time suit under § 1983 on the basis of Wilwording. Rodriguez v. McGinnis, 456 F.2d 79, 80, 82 (2nd Cir. 1972) (en banc). I conclude that plaintiffs reasonably relied or could reasonably have relied, on the then existing state of the law in pursuing their claims through a § 1983 action in federal court.
Without considering whether plaintiffs would have a remedy in state court if these actions were to be dismissed,[7] I believe that plaintiffs' prosecution of these actions for over two years in this court represents a substantial reliance interest. Plaintiffs' justifiable reliance favors non-retroactive application of Preiser.[8]
*710 For the defendant prison officials, full retroactivity might mean defending these actions anew in state court or being completely relieved of them. In either event there would be no significant sacrifice of a reliance interest. Defendants do not figure in the reliance calculation.

Effects on the Administration of Justice
Dismissal of these and similarly situated actions based on full retroactivity of Preiser would be disruptive of effective administration of justice. The disruption would lie not in the number of cases that might be relitigated in state court, but in the harm to the fact-finding process that additional delay will bring. Cases which have been pending in this court two years or longer and are now approaching trial already suffer from blurred memories and loss of witnesses thru death or otherwise. These problems of delay are accentuated in prisoners' suits by the scarcity of depositions, resulting from prisoners' frequent lack of counsel and from restrictions on the taking of depositions in prison.[9] The further delay that would result from dismissal and refiling in state court presents a strong argument for non-retroactivity.
It remains to attempt to draw a line between those § 1983 cases now pending in this court to which the new rule in Preiser is to be applied retroactively and those in which it is not to be applied retroactively.
I have decided that a practical line of distinction is this: whether a response[10] to the complaint was filed prior to the date of the entry of the decision in Preiser, May 7, 1973. In the present cases, responses had been filed prior to May 7, 1973.

ORDER
Upon the basis of the entire record herein, defendants' motions to dismiss and defendants' motions for judgment on the pleadings are hereby denied.
NOTES
[1] In some cases a minimum amount in controversy may be a further requirement for jurisdiction. The jurisdictional statutes relevant here  28 U.S.C. § 1343 and 28 U.S.C. § 2241  do not require a minimum amount.
[2] Linkletter traced the evolution of the doctrine of nonretroactivity from Blackstone's unquestioning belief that all judicial decisions were completely retroactive to the Austinian view that a contrary prior decision was "an operative fact and may have consequences which cannot justly be ignored." Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). Finding the Constitution silent on the issue, Linkletter adopted the latter view and called for a case-by-case evaluation of retroactivity.
[3] Wade/Gilbert held that a courtroom identification by a witness to whom the accused had previously been exhibited in the absence of counsel must be excluded unless the prosecution could establish an independent basis for the identification.
[4] Linkletter denied retroactive application of the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), to judgments of conviction already final. Mapp had held that evidence obtained by searches and seizures in violation of the Fourth and Fifth Amendments could not be used in state criminal trials.
[5] New constitutional rules involving the integrity of the truth-finding function were applied retroactively in Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969) (the rule announced in Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed. 2d 255 (1968) that testimony at a preliminary hearing by a person who is absent from the jurisdiction at the time of trial cannot be used unless the prosecution has made a good faith effort to secure the person's appearance); McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968) (the rule announced in Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), that counsel must be furnished a probationer in a proceeding for revocation of probation and imposition of sentence); Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) (the rule announced in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), that at a joint trial one codefendant's out-of-court confession which implicates another codefendant must be excluded). But a new constitutional rule which only "incidentally" improved the truth-finding function did not require retroactivity. Gosa v. Mayden, 413 U. S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973) (denying retroactivity to the rule announced in O'Callahan v. Parker, 395 U.S. 258, 89 S. Ct. 1683, 23 L.Ed.2d 291 (1968), that servicemen charged with crimes not service connected are entitled to indictment by a grand jury and trial by jury in a civilian court.)
[6] New constitutional rules expanding the exclusion of evidence obtained by illegal police searches or surveillance were applied prospectively in Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); and Linkletter, supra.
[7] Prison discipline regulations are expressly excluded from the review process of the Wisconsin Administrative Procedure Act, Wis.Stat. § 227.01(5)(h). It is questionable whether plaintiff would have a remedy at this time through writs of certiorari or mandamus.
[8] Cf. England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). England held that where a federal district court remits a plaintiff to state court under the abstention doctrine, the plaintiff cannot unreservedly litigate his action in state court and then return to federal court to relitigate the federal claim. The appellants in England had interpreted Government Employees v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957), as requiring them to litigate their federal claim fully in state court. The Supreme Court in England held this interpretation to be incorrect. It ruled that the plaintiff seeking to preserve the opportunity to litigate his federal claims in federal court must make the state court aware of those claims and of his intent to reserve them for federal court. A plaintiff who fully litigates his federal claims in state court can obtain review in a federal court only by appeal or certiorari to the United States Supreme Court.

The England appellants had had a full hearing of their federal claim in the state courts and had had the opportunity for appellate review in the United States Supreme Court, before they returned to the federal district court to litigate their federal claim. The Supreme Court declined, however, to enforce the new rule announced in England against the very parties to the case. It decided that the appellants' reasonable reliance on the pre-England, state of the law outweighed the purpose of the new rule. England, 375 U.S. at 422, 84 S.Ct. at 468:
But we are unwilling to apply the rule against these appellants. As we have noted, their primary reason for litigating their federal claims in the state courts was assertedly a view that Windsor required them to do so. [footnote omitted]
That view was mistaken, and will not avail other litigants who rely upon it after today's decision. But we cannot say, in the face of the support given the view by respectable authorities, including the court below, that appellants were unreasonable in holding it or acting upon it.
England and Preiser each established a new rule. In each case the rule was founded on considerations of federal-state comity and affected only the course of remedy. The Supreme Court's refusal to apply the England rule to the parties to that case suggests that the purpose behind a new rule which alters only the forum for remedial opportunities must yield in the face of substantial and reasonable reliance on the prior rule.
[9] Rule 30(a), Fed.R.Civ.P. provides: "The deposition of a person confined in prison may be taken only by leave of court on such terms as the court prescribes."
[10] By "response", I mean an answer or any defense motion under Rule 12(b), Fed.R. Civ.P.